# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Antwan Dukes,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Northern Metal Fab., Inc.,<br><br>　　　　　Defendant. | Case No. 13-cv-03647 (SRN/FLN)<br><br><br>**MEMORANDUM OPINION<br>AND ORDER** |

William L. Walker, Walker Law Offices, P.A., 1300 Lagoon Avenue South, Suite 240, Minneapolis, MN 55508, for Plaintiff.

Lee A. Miller, Stephen M. Warner, and Adina R. Florea, Arthur, Chapman, Kettering, Smetak & Pikala, P.A., 500 Young Quinlan Building, 81 South Ninth Street, Minneapolis, MN 55402, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

## I.　INTRODUCTION

This matter is before the Court on Defendant Northern Metal Fab., Inc.'s Motion for Summary Judgment [Doc. No. 12]. For the reasons stated below, the Court grants Defendant's Motion.[1]

---

[1] Plaintiff filed a Motion Opposing Summary Judgment [Doc. No. 17], requesting that summary judgment be denied because genuine issues of material fact exist. At the hearing on this matter, Plaintiff's counsel indicated that the intent in filing that document was to oppose Defendant's Motion, not to bring a cross-motion for summary judgment. Accordingly, Plaintiff's Motion Opposing Summary Judgment is denied as moot.

## II.     BACKGROUND

### A.     The Parties and the Employment Relationship

Defendant Northern Metal Fab., Inc. ("NMF") and Aerotek Temp Services/Allegis

Group ("Aerotek") are parties to a written agreement pursuant to which Aerotek "agrees to

provide Contract Employee personnel at [NMF's] request" and "under [NMF's]

management and supervision." (Warner Aff. [Doc. No. 15], Ex. 1 (Services Agreement) at

1.) Under the contract, Aerotek also agrees to provide "wages or other employment related

benefits to its Contract Employees"; to "make all appropriate tax, social security, Medicare

and other withholding deductions and payments"; to "provide worker's compensation

insurance coverage for it's [sic] Contract Employees"; and to "make all appropriate

unemployment tax payments." (Id.) NMF has the "responsibility to control, manage and

supervise the work of AEROTEK Contract Employees assigned to [NMF]."[2]  (Id.)

Plaintiff Antwan Dukes, a Minnesota resident, was employed by Aerotek to perform

temporary services for NMF at its Baldwin, Wisconsin facility. (Pl.'s Mem. of Law in Opp.

to Summ. J. [Doc. No. 18] ("Pl.'s Opp.") at 1.) He began his position as "Welder B" on

approximately January 30, 2012. (See Warner Aff., Ex. 2 (Application for Employment) at

4.) Plaintiff understood that his assignment at NMF was a "temp-to-hire" position. (Id., Ex.

7 (Dukes Dep.) 55:12–15.)

---

[2]     The Court notes that the agreement between Aerotek and NMF states that
"Contract Employees shall perform only the duties and functions of the specific jobs set
forth opposite the Contract Employee's name on Exhibit A or on the job description
attached to this Agreement." (Warner Aff. [Doc. No. 15], Ex. 1 at 1.) However, neither
party has supplied Exhibit A or argued that Plaintiff's duties were limited by the
agreement.

### B.   Plaintiff's Injury

On or about March 24, 2012, Plaintiff's supervisor instructed another NMF

employee, Eric Cooper, to show Plaintiff how to operate a drill in order to complete work

on a grind car being built at NMF's facility.  (See id., Ex. 6 (Incident Report) at 2.)  Mr.

Cooper instructed Plaintiff how to operate the drill to drive holes into the plate of the grind

car, as well as how to use the drill power buttons.  (Id. at 2.)  Plaintiff agrees that he was

"open and receptive" to using the drill and that he understood how to use the drill.  (See

Supplemental Warner Aff. [Doc. No. 26], Ex. 9 (Dukes Dep.) 90:11–91:24.)  He also

admits that he was assigned the drilling task by NMF, followed NMF's instructions in

completing the drilling task, and worked under NMF's supervision.  (See Warner Aff., Ex. 5

(Pl.'s Responses to Def.'s Requests for Admissions) at 2–3.)

Shortly after Plaintiff began drilling, the drill bogged down and the drill bit broke,

striking Plaintiff in the face.  (See id., Ex. 6 (Incident Report) at 1–3.)  Plaintiff was

transported to the emergency room.  (See id.)  After his injury, Plaintiff received worker's

compensation benefits from Aerotek.  (Id., Ex. 5 (Pl.'s Responses to Def.'s Requests for

Admissions) at 3.)

### C.   This Lawsuit

Plaintiff filed this negligence action against NMF "to recover for personal injuries

sustained by Plaintiff as a result of an unreasonably dangerous condition on [NMF's]

property . . . ; specifically on March 24, 2012, Plaintiff was injured by a drill which broke

while Plaintiff was using it."  (Compl. ¶ 3.)  Plaintiff claims that NMF "knew or in the

exercise of ordinary care should have known of the unreasonably dangerous condition of the

drill and neither corrected nor warned the Plaintiff of it." (Id. ¶ 4.)  Plaintiff also alleges that he "was ordered to use the drill by [NMF's] agent, employee, or contractor;" that NMF "negligently hired, retained, trained, and supervised its agents, employees, and contractors"; and that "[s]uch negligence was the direct and proximate cause of Plaintiff's subsequent injuries." (Id. ¶ 5.)  Plaintiff asserts that he has suffered "severe and permanent personal injuries" and that, because of these injuries, he has incurred and will continue to incur "significant medical expenses" and has suffered lost earnings and earning capacity. (Id. ¶¶ 6, 8–9.)  NMF filed its Motion for Summary Judgment on January 16, 2015, and the matter was heard on February 24.

## III.   DISCUSSION

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).  Summary judgment is proper if, drawing all reasonable inferences in favor of the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp., 477 U.S. at 322–23; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50 (1986).  A dispute over a fact is "material" only if its resolution might affect the outcome of the lawsuit under the substantive law. Anderson, 477 U.S. at 248.  A dispute over a fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id.

4

Although the party moving for summary judgment bears the burden of showing that the material facts in the case are undisputed, Celotex Corp., 477 U.S. at 323, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 256.  Thus, the movant is entitled to summary judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.  No genuine issue of material fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

NMF argues that Minnesota law applies to this diversity action and that summary judgment is appropriate because Minnesota's loaned-servant doctrine and the exclusive-remedy provisions of the Minnesota Workers' Compensation Act bar Plaintiff's claims. (Def.'s Mot. for Summ. J. [Doc. No. 12] at 1.)  Conversely, Plaintiff argues that NMF's reliance on the loaned-servant doctrine is misplaced.  (See Pl.'s Opp. at 3.)

**A.    Choice of Law**

In diversity cases, the district court applies the forum state's choice-of-law analysis to determine which state's substantive law governs the dispute. Schwan's Sales Enters., Inc. v. SIG Pack, Inc., 476 F.3d 594, 595–96 (8th Cir. 2007) (citation omitted). Under Minnesota's choice-of-law rules, "the first consideration is whether the choice of one state's law over another's creates an actual conflict." Jepson v. Gen. Cas. Co. of Wis., 513 N.W.2d 467, 469 (Minn. 1994) (citation omitted).  "A conflict exists if the choice of one

5

forum's law over the other will determine the outcome of the case."  Nodak Mut. Ins. Co.

v. Am. Family Mut. Ins. Co., 604 N.W.2d 91, 94 (Minn. 2000).  When the law of the

different states is the same, the federal court should apply the law of the forum state.  See

Davis by Davis v. Outboard Marine Corp., 415 N.W.2d 719, 723 (Minn. Ct. App. 1987).

At issue here are Minnesota's and Wisconsin's laws regarding workers' compensation

and the loaned-servant doctrine.

As for Minnesota, the Workers' Compensation Act ("WCA") provides that

employers "[are] liable to pay compensation in every case of personal injury . . . of an

employee arising out of and in the course of employment without regard to the question

of negligence."  Minn. Stat. § 176.021, subd. 1.  The employer's liability to pay workers'

compensation "is exclusive and in the place of any other liability to such employee."  Id.

§ 176.031.  Thus, the injured employee receives workers' compensation benefits,

regardless of fault, "in exchange for forfeiting the right to sue the employer in tort."

Minn. Brewing Co. v. Egan & Sons Co., 574 N.W.2d 54, 58 (Minn. 1998) (citation

omitted).  Under the WCA's election-of-remedies provision, "[a]n injured employee may

bring suit against an employer for benefits or against a third party for damages, but not

against both, if the employer and the third party are engaged in a common enterprise."

Olson v. Lyrek, 582 N.W.2d 582, 584 (Minn. Ct. App. 1998) (citing Minn. Stat.

§ 176.061, subds. 1, 4)).  A common enterprise exists if:  (1) "'[t]he employers [are]

engaged on the same project'"; (2) the employees are "'working together'" at a

"'common activity'"; and (3) the employees are "'subject to the same or similar

hazards.'" Id. (quoting McCourtie v. U.S. Steel Corp., 93 N.W.2d 552, 556 (Minn. 1958)).

Under Minnesota's loaned-servant doctrine, set forth in Danek v. Meldrum Manufacturing & Engineering Co., an employee loaned by one employer (i.e., the general employer) to another (i.e., the special employer) may also become the employee of the latter if:

    (a)    the employee has made a contract of hire, express or implied, with the special employer;

    (b)    the work being done is essentially that of the special employer; and

    (c)    the special employer has the right to control the details of the work.

252 N.W.2d 255, 258 (Minn. 1977) (citation and internal quotation marks omitted). When all three of these conditions are satisfied, both employers are liable for workers' compensation, id., but the employers can agree to distribute the benefits however they choose, Minn. Stat. § 176.071.

Under Wisconsin's Workers' Compensation Act, "'employers are held strictly liable for all work-related injuries that befall their employees in return for immunity from tort action.'" Kopfhamer v. Madison Gas & Elec. Co., 654 N.W.2d 256, 262 (Wis. Ct. App. 2002) (quoting Bauernfeind v. Zell, 528 N.W.2d 1, 5 (Wis. 1995)). And, under Wisconsin's "temporary help" statute, "'[n]o employee of a temporary help agency who makes a claim for compensation may make a claim or maintain an action in tort against any employer who compensates the temporary help agency for the employee's services.'" Id. (quoting Wis. Stat. § 102.29(6)). Thus, special employers are immune from tort

7

liability if the general employer is a "temporary help agency," which is defined as "'an employer who places its employee with or leases its employees to another employer who controls the employee's work activities and compensates the first employer for the employee's services.'"  Id. (quoting Wis. Stat. § 102.01(2)(f)).

Because both Minnesota and Wisconsin have a workers' compensation act with an exclusive remedy provision, and because both states recognize a version of the loaned-servant doctrine, application of either state's law would not be outcome-determinative. Accordingly, the Court will apply the law of the forum state, Minnesota.

**B.     Loaned-Servant Doctrine**

NMF contends that all three conditions of Minnesota's loaned-servant doctrine are met and, therefore, Plaintiff cannot seek tort damages from NMF because he elected to receive workers' compensation benefits from Aerotek.  (Def's Mem. of Law in Supp. of Summ. J. [Doc. No. 14] at 9.)  The Court agrees.

**1.     Contract for hire**

The first Danek prong asks whether an employee "consented to the special employment relationship as evidenced by the existence of a contract of hire, express or implied."  252 N.W.2d at 259.  Consent may be implied where the employee seeks an assignment with the special employer.  See Ulstad v. Brenny, 645 N.W.2d 767, 771 (Minn. Ct. App. 2002) (holding that where the plaintiff initiated her transfer to work for the special employer, she consented to the employment relationship).  Consent also may be inferred in the labor-broker context.  See Danek, 252 N.W.2d at 260 (holding that the employee "should be deemed to have consented" to perform services for the special employer where

8

the general employer was a labor broker); <u>Lundstrom v. Maguire Tank, Inc.</u>, 509 F.3d 864, 867 (8th Cir. 2007) (stating that, in Minnesota, implied consent to a special employment relationship exists as a matter of law when a labor broker is the general employer). "A labor broker is defined as a business [that] hires employees and in effect sells their services to a second employer in need of temporary help." <u>Ulstad</u>, 645 N.W.2d at 770 (citation and internal quotation marks omitted).

Here, there is no dispute that Plaintiff filed an application for a welding position with NMF and understood that Aerotek placed him into employment with NMF on a "temp-to-hire" basis. Therefore, Plaintiff's consent to the special employment relationship with NMF may be implied. Plaintiff's consent also may be inferred because Aerotek was a labor broker—its sole business was to "provide Contract Employee personnel at [NMF's] request," and it was responsible for compensating and providing employment-related benefits, including workers' compensation insurance, to those employees.

Plaintiff argues that because he consented to perform welding—rather than drilling—services for NMF, he did not consent to the employment. Plaintiff, however, points to no authority to support the proposition that an employee must consent to the particular type of work to be completed for the special employer, rather than simply to the employment relationship itself. Even if this Court were to construe the consent requirement to mean that an employee must consent to a specific type of work, Plaintiff agreed to—and in fact did—perform drilling work for NMF. Therefore, Plaintiff consented to the employment relationship with NMF, and the first loaned-servant doctrine condition is satisfied.

### 2.      Work performed

The second question the Court must address is whether the work Plaintiff

performed was essentially that of NMF.  See Danek, 252 N.W.2d at 258.  Here, there is

no dispute that the drilling work Plaintiff was performing at the time of the accident was

assigned by NMF, was conducted pursuant to NMF's instructions, and was done solely to

complete work on a grind car being built at NMF's facility.  Therefore, the work Plaintiff

performed was essentially that of NMF, and the second loaned-servant doctrine condition

is satisfied.

### 3.      Control of details

The final question is whether NMF had the right to control the details of Plaintiff's

work.  See id.  Here, the agreement between Aerotek and NMF states that it was NMF's

responsibility "to control, manage and supervise" Plaintiff's work.  Moreover, Plaintiff

admits that he was under NMF's supervision and followed NMF's instructions in

completing the drilling task.  Therefore, there is no dispute that NMF had the right to

control the details of Plaintiff's work, and the third loaned-servant doctrine condition is

satisfied.

Accordingly, there is no genuine issue of material fact regarding application of the

loaned-servant doctrine.  Both Aerotek and NMF were liable to Plaintiff for workers'

compensation, and Plaintiff elected to receive those benefits from Aerotek.  He is now

barred as a matter of law from seeking damages from NMF.

### C.      Common Enterprise

Contrary to Plaintiff's contention, application of the common-enterprise doctrine does not mandate a different result in this case.  (See Pl.'s Opp. at 3–4.)  If Aerotek and NMF were engaged in a common enterprise, as suggested by Plaintiff, that relationship would trigger the WCA's election-of-remedies provision such that Plaintiff could seek benefits from Aerotek or damages from NMF, but not both.  See Olson, 582 N.W.2d at 584.  Because Plaintiff elected to receive workers' compensation benefits from Aerotek, he is precluded from recovering damages from NMF.  Therefore, Plaintiff has failed to raise a genuine issue for trial, and summary judgment on his claims is appropriate.

## IV.    ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1.      Defendant's Motion for Summary Judgment [Doc. No. 12] is **GRANTED**;

2.      Plaintiff's Motion Opposing Summary Judgment [Doc. No. 17] is **DENIED AS MOOT**; and

3.      Plaintiff's Complaint [Doc. No. 1] is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:  April 23, 2015                              s/Susan Richard Nelson
                                                            SUSAN RICHARD NELSON
                                                            United States District Judge